Jones, J. (dissenting).
I differ with the majority as to the legal effect to be accorded the strike clause in the bill of lading in this case which accompanied the incorporation therein by reference of the parallel provisions of the Carriage of Goods by Sea Act. By these means, and explicitly, Rodriguez agreed to “ exempt the carrier from liability for loss or damage arising or resulting from * * * strikes or lockouts or stoppage or restraint of labor from whatever cause, whether partial or general ’ ’.
I can only conclude that the parties intended that should a strike interfere with or cause a delay in delivery of the cloves, Moore-McCormack would be protected against economic loss in consequence thereof. By what impresses me as a misfiring of both justice and common sense, the majority reaches precisely the opposite result. In what is concededly an extreme factual setting, the majority holds this carrier in the circumstances of this case to a greater liability in damages than would have been the case had there been no strike provision in the contract.
I agree that the general rule of damages for failure to deliver cargo* is its fair market value as of the date, when the cargo should have been delivered. Absent the strike clause, delivery in this case clearly should have been made in December, 1968, promptly on arrival of the S. S. Mormacpenn in' New York. Failure to deliver the cloves would then have exposed the line to liability measured by fair market value as of that date, which the parties have stipulated was $19,980.
The majority accords legal significance to the strike clause to the extent of affecting the issue of liability by holding that it operated to excuse the carrier’s delay in performance. When it comes to the issue of damages, however, it concludes that the strike clause has lost its vitality. To the extent that this result is predicated on the finding of two sections of the Carriage of Goods by Sea Act, one said to deal with liability and the other with damages, I note that in this bill of lading there was more *436 than the mere incorporation of the provisions of the act by reference thereto. Additionally the parties framed a provision of their contract by repetition, in hac verbae, of the wording of one of the sections of the act. We may presume, I take it, that by this means more was intended to be accomplished than would have been the case had the bill of lading contained only the statutory incorporation by reference.
In my view the strike provision at least in its articulated form was included by the two parties here for the protection of the one with the agreement of the other, against economic loss in the event a labor strike interfered with their plans for carriage and delivery in normal course, in effect to neutralize the impact of a strike. The result reached by the majority appears here to impose on the carrier precisely the liability from which the strike clause was designed to protect it. I suggest that the members of the mercantile community whom we serve will find the result our court reaches today bizarre and incongruous — frustrative rather than implementive of normal intentions and expectations.
I cannot vote for a result which imposes a greater loss on the carrier in consequence of the strike than as if the parties had made no agreement to protect the carrier against the effects of a strike. Accordingly, I dissent.
Judges Burke, Jasen and Wachtler concur with Judge Breitel ; Judge Jones dissents in part and votes to modify in a separate opinion in which Chief Judge Fuld concurs; Judge G-abrielli dissents in part and votes to modify on the dissenting opinion at the Appellate Division.
Order affirmed.

 The agreed statement of facts in the submission in this ease is completely silent as to when, either before or after the arrival of the S. S. Mormacpenn in port, or how the cloves disappeared. Thus, it may not be taken for the consignee or against the carrier that loss occurred after the December docking. Our disposition must be equally consistent with a loss of cargo prior to the vessel’s arrival in the Port of New York.